UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

RANDY COPLEY,  KENNETH
MCLAUGHLIN, and JOSHUA WOOD,

        Plaintiffs,

    v.

CITY OF LOWELL,

        Defendant.

Civil Action No. 14-10270

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................................. 1

   A.   The Challenged Ordinance. ......................................................................................... 3

   B.   The Plaintiffs. ............................................................................................................ 8

II.  ARGUMENT ...................................................................................................................... 9

   A.   Plaintiffs Are Likely to Prevail On their Claims. ........................................................ 9

      1.   Panhandling and Solicitation Are Protected Under the First Amendment...................... 9

      2.   The Ordinance is an Unconstitutional Restriction on Speech ....................................... 10

      3.   The Ordinance is Unconstitutionally Vague. ............................................................... 17

      4.   The Ordinance Impermissibly Discriminates Against the Homeless............................ 18

   B.   Plaintiffs Will Suffer Irreparable Harm Absent a Preliminary Injunction. .................... 20

   C.   In Light of Plaintiffs' Likelihood of Success and Showing of Irreparable Harm, the Balance of Harms Favors Plaintiffs. ........................................................................... 20

   D.   An Injunction Serves the Public Interest. .................................................................... 20

III.  CONCLUSION ................................................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

<span style="font-variant: small-caps">Cases</span>

*ACLU v. Johnson*,
   194 F.3d 1149 (10th Cir. 1999) ...................................................................20

*Ackerley Commc'ns of Massachusetts, Inc. v. City of Somerville*,
   878 F.2d 513 (1st Cir. 1989) .....................................................................12

*Auburn Police Union v. Carpenter*,
   8 F.3d 886 (1st Cir. 1993) ..........................................................................12

*Benefit v. City of Cambridge*,
   679 N.E.2d 184 (Mass. 1997) ............................................................. passim

*Berkeley Cmty. Health Project v. City of Berkeley*,
   902 F. Supp. 1084 (N.D. Cal. 1995) ...........................................................10

*Blair v. Shanahan*,
   775 F. Supp. 1315 (N.D. Cal. 1991) ...........................................................10

*State v. Boehler*,
   262 P.3d 637 (Ariz. App. 2011) ..................................................................13

*C.C.B. v. State*,
   458 So. 2d 47 (Fla. App. 1984) ...................................................................10

*Casey v. City of Newport, R.I.*,
   308 F.3d 106 (1st Cir. 2002) .......................................................................15

*City of Chicago v. Morales*,
   527 U.S. 41 (1999) ......................................................................................17

*City of Cleburne v. Cleburne Living Center*,
   473 U.S. 432 (1985) ....................................................................................19

*City of Houston v. Hill*,
   482 U.S. 451 (1987) ....................................................................................18

*Clatterbuck v. City of Charlottesville*,
   708 F.3d 549 (4th Cir. 2013) .............................................................. passim

*Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*,
   657 F.3d 936 (9th Cir. 2011) (*en banc*) ......................................................4

*Elrod v. Burns*,
    427 U.S. 347 (1976)............................................................................................3, 20

*Gentile v. State Bar of Nevada*,
    501 U.S. 1030 (1991)........................................................................................17, 18

*Hill v. Colorado*,
    530 U.S. 703 (2000)................................................................................................11

*Kelley v. City of Parkersburg*,
    No. 6:13-cv-23260, 2013 WL 5716350 (S.D. W. Va. Oct. 16, 2013)....................10

*Ledford v. State*,
    652 So. 2d 1254 (Fla. App. 1995)..........................................................................10

*Linmark Assocs., Inc. v. Twp. Of Willingboro*,
    431 U.S. 85 (1977)..................................................................................................16

*Loper v. New York City Police Dep't*,
    999 F.2d 699 (2d Cir. 1993)........................................................................10, 14, 16

*Papachristou v. City of Jacksonville*,
    405 U.S. 156 (1972)................................................................................................18

*Parr v. Mun. Court for Monterey-Carmel Judicial Dist*,
    479 P.2d 353 (Cal. 1971) .......................................................................................19

*People v. Griswold*,
    821 N.Y.S.2d 394 (N.Y. City Ct. 2006) ................................................................10

*Perry Educ. Ass'n v. Perry Local Educators' Ass'n*,
    460 U.S. 37 (1983)......................................................................................12, 13, 16

*Police Dep't of the City of Chicago v. Mosley*,
    408 U.S. 92 (1972)..................................................................................................11

*R.A.V. v. City of St. Paul*,
    505 U.S. 377 (1992)..........................................................................................11, 12

*Sindicato Puertorriqueno de Trabajadores v. Fortuno*,
    699 F.3d 1 (1st Cir. 2012).......................................................................................20

*Smith v. Goguen*,
    415 U.S. 566 (1974)..........................................................................................17, 18

*Solantic, LLC v. City of Neptune Beach*,
    410 F.3d 1250 (11th Cir. 2005) ..............................................................................12

*Speet v. Schuette*,
　　726 F.3d 867 (6th Cir. 2013) ....................................................................10, 14, 16

*Turner Broad. Sys., Inc. v. FCC*,
　　512 U.S. 622 (1994)....................................................................................11, 12, 13

*Village of Schaumburg v. Citizens for a Better Environment*,
　　444 U.S. 620 (1980)............................................................................................9, 16

*Wagner v. City of Holyoke*,
　　100 F. Supp. 2d 78 (D. Mass. 2000) ..................................................................9, 20

*Westfield High Sch. L.I.F.E. Club v. City of Westfield*,
　　249 F. Supp. 2d 98 (D. Mass. 2003) ......................................................................20

*Wilkinson v. State*,
　　860 F. Supp. 2d 1284 (D. Utah 2012) ....................................................................10

## OTHER AUTHORITIES

U.S. Const. amend. I ............................................................................................ passim

U.S. Const. amend. XIV ................................................................................2, 17, 18

Plaintiffs Randy Copley, Kenneth McLaughlin, and Joshua Wood (collectively, "Plaintiffs") submit this memorandum of law in support of their Motion for Preliminary Injunction against Defendant City of Lowell (the "City").

## I.    <u>INTRODUCTION</u>

This action concerns the Lowell City Council's (the "City Council") attempt to move its homeless citizens out of sight through a targeted assault on their First Amendment rights.  The City Council adopted the challenged ordinance, C.O. c. 222, § 222.15 (the "Ordinance") with a simple goal: to ban "panhandling"—the solicitation of donations by the homeless—within downtown Lowell without preventing charities or other socially-acceptable groups from soliciting donations.  The Council's initial Ordinance accomplished this discrimination explicitly by banning all solicitation while exempting solicitation by 501(c) organizations and individuals soliciting on behalf of others; as a result of that broad exemption, only charitable solicitation by individuals for their own benefit was banned.  When threatened with a constitutional challenge to that explicit content-based speech ban, the City responded by making things worse.  First, it *expanded* the Ordinance to include a facial ban on *all* charitable solicitation in downtown Lowell—including solicitation by charities that only weeks earlier the City professed no interest in banning.  Simultaneously, it converted the offense into ignoring a police officer's warning to stop soliciting, thereby allowing police officers, by the simple expedient of not issuing warnings, to ignore soliciting by the non-homeless and hence to effectively reinstitute the non-profit exemption.  The amendments also added a ban on what the City Council termed "aggressive" panhandling in downtown Lowell.  Far from being limited to truly aggressive behavior, however, this provision sets up hundreds of buffer zones throughout the downtown area in which even non-aggressive speech—such as merely holding a sign asking for help—is banned.

Lowell cannot silence its most vulnerable citizens by introducing such overly broad,

burdensome restrictions on their right to free speech. Because (1) Plaintiffs are likely to succeed on the merits of their constitutional claims, (2) they will suffer irreparable harm if the Ordinance is enforced, (3) the balance of harms weighs in their favor, and (4) an injunction is in the public interest, Plaintiffs are entitled to a preliminary injunction against enforcement of the Ordinance.

*First*, Plaintiffs are likely to succeed in proving that the Ordinance is unconstitutional on its face as (1) impermissibly content-based and overbroad, (2) unconstitutionally vague, and (3) unlawfully discriminatory.

The Ordinance is content-based because it defines solicitation to include only requests for immediate donations of money, while excluding solicitation of other things, like future donations of money or signatures for a petition; it thus singles out for disfavor a particular category of speech. As a content-based restriction, the Ordinance is presumed invalid unless it can satisfy strict scrutiny; *i.e.*, it must be narrowly tailored to a achieve compelling government interest. The only interest the Ordinance identifies to justify its total ban on solicitation for immediate donations—promoting tourism in the downtown area—is not compelling. And even if it were, or if the Ordinance is content-neutral, the Ordinance is not narrowly tailored. It allows police to prohibit everything from Salvation Army volunteers ringing a bell to a driver asking for a quarter from passersby to feed a meter. Even the ban on "aggressive" solicitation is overbroad; the Ordinance's definition of "aggressive" goes far beyond truly aggressive conduct to include a substantial amount of peaceful speech, such as a homeless woman with a sign requesting food for her children, under utterly banal circumstances, such as near a line for a music club.

Plaintiffs are also likely to succeed in their claim that the Ordinance provides police too much discretion to define the offense and hence violates the Due Process Clause. The Ordinance bans an enormous amount of everyday behavior, and then trusts the police to exercise their

discretion to enforce the Ordinance only against the homeless.

Finally, Plaintiffs will likely succeed in showing that the Ordinance unlawfully discriminates against the homeless. The City Council considers this unpopular segment of the population to be a nuisance, and tried to rid itself of that nuisance by depriving its most vulnerable citizens of one of their primary means for scraping by.

*Second*, Plaintiffs are likely to suffer irreparable harm absent injunctive relief. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

*Third*, the balance of harms favors an injunction. Any interest that the City has in enforcing this ordinance is far outweighed by Plaintiffs' First Amendment rights.

*Fourth*, the public interest calls for an injunction. An injunction will protect not only Plaintiffs' rights, but also the rights of non-plaintiffs whose speech may be chilled.

## FACTS

### A.     The Challenged Ordinance

The Ordinance has two provisions: a total ban on panhandling in downtown Lowell and a ban on "aggressive" panhandling in downtown Lowell. Before arresting someone for violating the total ban, the police must request that the person cease panhandling, while the police can arrest someone for "aggressive" panhandling without such a warning. The City justifies the total ban on panhandling based on an interest in promoting tourism, and justifies the ban on "aggressive" panhandling based on an interest in public safety.

The provision banning all panhandling states: "Panhandling is prohibited within the Downtown Lowell Historic District. Any police officer observing any person violating this provision may request or order such person to cease and desist in such behavior and may arrest such person if they fail to comply with such request or order." *See* Declaration of Eric Lawson

("Lawson Decl."), Exs. 1, 2. The Ordinance defines "panhandling" to encompass a broad range of peaceful speech, including "solicitation of any item of value, monetary or otherwise, made by a person, requesting an immediate donation of money or exchange of series,"[1] and selling an item "for an amount far exceeding its value" when "a reasonable person would understand that the purchase is in substance a donation." *Id.* The Downtown Lowell Historic District includes approximately four hundred acres in central Lowell, including the private buildings located with that area. Lawson Decl., Exs. 3, 4. It also includes the sidewalks outside the City Hall, the District Court House, and Middlesex Community College. *See* Lawson Decl., ¶ 6, Ex. 4.

The provision banning "aggressive" panhandling states: "Panhandling in an aggressive manner is prohibited within the Downtown Lowell Historic District. Any police officer observing any person violating this provision may arrest such person." The Ordinance defines "aggressive manner" broadly to encompass, *inter alia*, the following activity:

> (b) continuing to engage in panhandling toward a person after the person has given a negative response to such soliciting;

> * * *

> (g) panhandling toward anyone who is waiting in line for tickets, for entry to a building or for any other purpose;

> ***

> (10) [sic] panhandling within 20 feet of the entrance to, or parking area of, any bank, automated teller machine, automated teller machine facility, check cashing business, mass transportation facility, mass transportation stop, public restroom, pay telephone or theatre, or of any outdoor seating area of any café, restaurant or other business.

Lawson Decl., Ex. 2.

---

[1] The Ordinance never explains what an "exchange of series" is. If the City Council intended to forbid solicitation of an exchange of *services*, the Ordinance would suffer from additional First Amendment problems not addressed here. *See Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936 (9th Cir. 2011) (*en banc*).

The challenged Ordinance is the latest act in the Lowell City Council's ongoing effort to drive out its homeless population. As explained in paragraphs 20-22 of Plaintiffs' Complaint, since at least 2008 the City Council has actively sought to rid itself of its homeless population by proposing to move an important homeless shelter from Lowell to the Tewksbury hospital; opposing the relocation to downtown of a Christian nonprofit providing support to the homeless; and voting to clear three homeless encampments along the Merrimack and Concord Rivers. *See* Lawson Decl., Exs. 5-10.

Not satisfied with its prior efforts to expel the homeless, at the July 9, 2013 City Council meeting, Councilor Marty Lorrey, with the support of other Councilors, proposed that the City ban panhandling. The Councilors' comments make clear that their goal was to clear panhandlers from the City. *See* Complaint ¶¶ 23-27. Councilor Lorrey, for example, wanted to "send out a message" to panhandlers: "not in Lowell." Lawson Decl., ¶ 13, Ex. 11. In contrast, the Council wanted to protect people's right to engage in what it considered "legitimate" solicitation—for example, solicitation by charities, musicians, and folk festivals. *See id.*; Complaint ¶ 26.

As a result of the July 9 meeting, the City Council asked the City Solicitor's Office for advice concerning how to eliminate "panhandling" in Lowell. The City Solicitor's subsequent opinion letter noted that anti-"panhandling" ordinances have serious "First Amendment implications" because "courts have found that the act of panhandling is inextricably linked to the expression of free speech, whether verbal or otherwise." Lawson Decl., Ex. 12. To avoid the First Amendment issues, the City Solicitor recommended both more consistent enforcement of existing laws and adopting a new anti-panhandling ordinance. *Id.* at 1. Regarding existing laws, the City Solicitor emphasized that state and local law already prohibit "unwanted touching or verbal harassment," "loitering in public transportation facilities, which includes the garages" and

"soliciting business in the street," and that consistent enforcement of these laws would address the negative behaviors at times associated with panhandling. *Id.* at 5. In order to survive judicial scrutiny, the City Solicitor advised the Council to frame any new ordinance banning panhandling as addressing a state interest such as supporting downtown tourism, *id.* at 1-2—although promoting tourism had not been mentioned at any City Council meetings.

On October 15, 2013, following the City Solicitor's opinion letter, the Council again discussed banning panhandling. The statements supporting a panhandling ban mirrored the July 15, 2013 statements—the Council wanted to pan panhandling by the homeless, but to protect solicitations by charitable organizations and musicians. Accordingly, the Council asked the law department to draft an ordinance along these lines. *See* Complaint ¶ 33; Lawson Decl., ¶ 16, Ex. 13. The Councilors mentioned neither tourism nor public safety at this meeting.

On October 29, 2013 the Council received the draft ordinance and sent it to a public hearing. Lawson Decl., ¶ 18, Ex. 14. Like the current version of the Ordinance, this version banned solicitation of immediate donations in the Downtown Lowell Historic District. However unlike the current Ordinance, this version *allowed* solicitation by "any non-profit, religious, civic or benevolent organization described in Section 501(c) of the Internal Revenue Code" and anyone not "acting on his/her own behalf." Lawson Decl., Ex. 1. This version also did not require the police to warn solicitors before making an arrest, nor did it ban "aggressive" panhandling. To justify the Ordinance, the City claimed an interest in eliminating "nuisance activity," and asserted, without evidence, that "panhandling substantially burdens tourism within the Downtown Historic District." *Id.*

On November 12, 2013, the Council held a public hearing. Only one person, Councilor-elect Corey Belanger, supported the Ordinance, arguing it was needed to prevent "businesses and

individuals [from] being inconvenienced."  Lawson Decl., ¶ 20, Ex. 15.  Nine members of the public spoke against the Ordinance, responding that, in their experience, panhandling is not a problem in Lowell.  The City Council adopted the Ordinance immediately following the public hearing.  *Id.*  In all, the City Council records and minutes suggest that prior to passing the Ordinance, the City Council conducted no research and collected no quantitative information regarding the impact of panhandling on tourism within downtown Lowell.

In response to a threatened constitutional challenge, the City Council considered amending the Ordinance at meetings held on January 7 and 14, 2014.  The amendment removed the exemptions for 501(c) organizations and for people not soliciting on their own behalf—in other words, it extended the solicitation ban to *all* solicitation in downtown Lowell.  But the amendment also added a provision requiring the police to give a warning before an arrest for violating the Ordinance.  Specifically, the amendment added a sentence to the ban on solicitation in downtown Lowell that provides: "Any police officer observing any person violating this provision may request or order such person to cease and desist in such behavior and may arrest such person if they fail to comply with such request or order."  Lawson Decl., Ex. 2.  Thus, while the amendments eliminated the charitable organization exemption from the face of the Ordinance, it simultaneously introduced an element of discretion that would permit police to ignore soliciting by such organizations.

The proposed amendment also added a prohibition on so-called "aggressive" panhandling.  The police need not give warning before arresting someone for "aggressively" panhandling.  *See id.*  The City justified the ban on "aggressive" panhandling based on its interest in "establishing certain reasonable time, place, and manner regulations whenever potential First Amendment activities such as . . . panhandling . . . affect the safety or wellbeing of

any person(s)." *Id.*  A preamble to the amendment claims that the Lowell Police Department received 237 calls related to panhandling in the first eleven months of 2013, and that "some" of them involved "aggressive behavior." *Id.*  It does not state whether any of the calls concerned behavior of the kind tarred as "aggressive" by the Ordinance:  soliciting near bus stops, or near people standing in a line, or near a bank parking lot.  Nor does the preamble state whether any of the calls concerned non-vocal solicitation, such as holding a sign asking for help.  The City also has never explained why it is banning "aggressive" conduct that purportedly poses a risk to public safety *only* in downtown Lowell, while theoretically allowing such behavior to continue in the rest of the City.

On February 4, 2014 the City Council adopted the amendment by a vote of nine to zero.

### B.      The Plaintiffs

Plaintiffs are individuals who regularly solicit donations or engage in other protected speech in the Downtown Lowell Historic District.  Plaintiffs Randy Copley, Kenneth McLaughlin, and Joshua Wood are residents of Lowell who have been homeless for approximately 2, 5 and 4 years, respectively.  They rely on a number of homeless services that are located in, or in close proximity to the Downtown Lowell Historic District.  They regularly stand on the sidewalk in the Downtown Lowell Historic District and ask people for money.  Plaintiffs rely on the donations they receive for necessities, including their co-pays for prescription drugs.  Since the Ordinance was adopted, the Plaintiffs have restricted their panhandling in the Downtown Lowell Historic District out of fear of enforcement.  This restriction has made it more difficult to obtain necessities.  *See* Declaration of Randy Copley ("Copley Decl."); Declaration of Kenneth McLaughlin ("McLaughlin Decl."); Declaration of Joshua Wood ("Wood Decl.").

## II.    ARGUMENT

In determining whether to grant a preliminary injunction, courts consider and weigh four factors: "(1) the likelihood of success on the merits; (2) the potential for irreparable harm if the injunction is denied; (3) the balance of relevant impositions, *i.e.*, the hardship to the nonmovant if enjoined as contrasted with the hardship to the movant if no injunction issues; and (4) the effect (if any) of the court's ruling on the public interest."  *Wagner v. City of Holyoke*, 100 F. Supp. 2d 78, 82 (D. Mass. 2000).  All of these factors weigh in favor of a preliminary injunction.

### A.    Plaintiffs Are Likely to Prevail On their Claims

#### 1.    Panhandling and Solicitation Are Protected Under the First Amendment

It is well-established that solicitation, panhandling, and begging are constitutionally protected forms of speech.  *See Vill. of Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620, 632 (1980); *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 553 (4th Cir. 2013).  In *Village of Schaumburg*, the Supreme Court struck down an ordinance that prohibited solicitation by certain organizations, holding that "charitable appeals for funds, on the street or door to door, involve a variety of speech  interests—communication of information, the dissemination and propagation of views and ideas, and the advocacy of causes—that are within the protection of the First Amendment."  444 U.S. at 632.  As the Court explained, "solicitation is characteristically intertwined with informative and perhaps persuasive speech seeking support for particular causes or for particular views on economic, political, or social issues."  *Id.* at 620-21.

Likewise, begging and panhandling are expressive activities that are protected by the First Amendment.  As the Second Circuit has observed:

> Begging frequently is accompanied by speech indicating the need for food, shelter, clothing, medical care or transportation.  Even without particularized speech, however, the presence of an unkempt and disheveled person holding out his or her hand or a

> cup to receive a donation itself conveys a message of need for
> support and assistance.

*Loper v. New York City Police Dep't*, 999 F.2d 699, 704 (2d Cir. 1993); *see also Benefit v. City of Cambridge*, 679 N.E.2d 184, 188 (Mass. 1997) (concluding that "there is no distinction of constitutional dimension between soliciting funds for oneself and for charities and therefore that peaceful begging constitutes communicative activity protected by the First Amendment").

Accordingly, numerous courts have held that restrictions on begging or panhandling are unconstitutional. In *Benefit*, for example, the Supreme Judicial Court struck down a Massachusetts statute that made it a crime to beg without a license, finding that there was no compelling state interest justifying such a broad restriction on the right to freedom of speech:

> *The statute intrudes not only on the right of free communication, but it also implicates and suppresses an even broader right—the right to engage fellow human beings with the hope of receiving aid and compassion.* . . . If such a basic transaction as peacefully requesting or giving casual help to the needy may be forbidden in all such places, then we may belong to the government that regulates us and not the other way around.

*Benefit*, 679 N.E.2d at 190 (emphasis added). The list of decisions striking down restrictions on begging is extensive.[2] Plaintiffs are unaware of any decision upholding a ban on panhandling within so extensive a swathe of a downtown area as imposed by the Ordinance.

2.      The Ordinance is an Unconstitutional Restriction on Speech

Neither the total ban on panhandling nor the ban on "aggressive" panhandling satisfy the First Amendment requirements for banning protected speech in traditional public fora. Because it regulates only requests for an immediate donation of money, and not requests for anything

---

[2] *E.g.*, *Speet v. Schuette*, 726 F.3d 867 (6th Cir. 2013); *Clatterbuck v. City of Charlottesville*, 708 F.3d 549 (4th Cir. 2013); *Loper*, 999 F.2d, at 704; *Wilkinson v. State*, 860 F. Supp. 2d 1284 (D. Utah 2012); *Berkeley Cmty. Health Project v. City of Berkeley*, 902 F. Supp. 1084 (N.D. Cal. 1995); *Blair v. Shanahan*, 775 F. Supp. 1315 (N.D. Cal. 1991), *vacated as moot*, 919 F. Supp. 1361 (N.D. Cal. 1996); *Ledford v. State*, 652 So. 2d 1254 (Fla. App. 1995); *C.C.B. v. State*, 458 So. 2d 47 (Fla. App. 1984); *People v. Griswold*, 821 N.Y.S.2d 394 (N.Y. City Ct. 2006); *Kelley v. City of Parkersburg*, No. 6:13-cv-23260, 2013 WL 5716350 (S.D. W. Va. Oct. 16, 2013).

else, the Ordinance is content-based. Content-based regulations must be supported by a compelling government interest, and promoting tourism is not such an interest. Further, the Ordinance is overbroad because it is not narrowly tailored to an interest in promoting either tourism or public safety, and does not leave open adequate alternate channels of communication.

a.     The Ordinance Is A Content-Based Speech Restriction

"[A]bove all else, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Police Dep't of the City of Chicago v. Mosley*, 408 U.S. 92, 95 (1972). Government regulations that are based on content are therefore "presumptively invalid." *R.A.V. v. City of St. Paul*, 505 U.S. 377, 382 (1992). Regulations are classified as content-based when they "impose differential burdens upon speech because of its content." *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 641-42 (1994). A content-neutral regulation, on the other hand, "places no restrictions" on "any subject matter that may be discussed." *Hill v. Colorado*, 530 U.S. 703, 723 (2000).

Lowell's Ordinance is content-based because it regulates only solicitation for "immediate donation[s] of money." As such, "[w]hether the Ordinance is violated turns solely on the nature or content of the solicitor's speech: it prohibits solicitations that request immediate donations of things of value, while allowing other types of solicitations, such as those that request future donations, or those that request things which may have no 'value'—a signature or a kind word, perhaps." *Clatterbuck*, 708 F.3d at 556. This distinction is not coincidental. By targeting those who urgently need money to fulfill daily necessities, while exempting those who have the luxury to solicit commitments for future donations, the Ordinance targets the speech of the homeless, while "shielding from government chastisement requests for help made by better-dressed people for other, less critical needs." *Benefit*, 679 N.E.2d at 189.

The Ordinance is also content-based because it regulates only solicitation of immediate charitable donations, not solicitation for commercial transactions that involve an immediate transfer of money. *See Auburn Police Union v. Carpenter*, 8 F.3d 886, 892-93 (1st Cir. 1993) (regulation is content-based when it applies to "only certain types of solicitation, necessitating an examination of the content of each solicitation").

"Content-based regulations are presumptively invalid," *R.A.V.*, 505 U.S. at 382, and are subject to "the most exacting scrutiny," *Turner*, 512 U.S., at 641-42. Accordingly, the City must show that the Ordinance is (1) "necessary to serve a compelling state interest," and (2) "narrowly drawn to achieve that end." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983); *see also Benefit*, 679 N.E.2d at 189.

b. The Ordinance's Total Ban on Solicitation Is Not Supported by a Compelling State Interest

Lowell's ban on all solicitation for immediate donations in 400 acres of downtown is not supported by a compelling state interest. The only interest the Ordinance identifies to justify its total ban is providing a pleasant environment for tourism. But the First Amendment would mean little if the state could evade its protections based simply on a desire to remove from public sidewalks any speech that tourists might find unpleasant. Courts have regularly held that whatever interest the government might have in beautifying its streets, those interests are not compelling. *See Solantic, LLC v. City of Neptune Beach*, 410 F.3d 1250, 1268 (11th Cir. 2005) ("general interests in aesthetics" are not "compelling"); *Ackerley Commc'ns of Massachusetts, Inc. v. City of Somerville*, 878 F.2d 513, 521 (1st Cir. 1989) ("[W]e think it highly unlikely that aesthetics ever could be a sufficient justification for a penalty on speech."). And it certainly cannot be that a desire to protect tourists or residents from speech they may prefer not to hear is a compelling state interest. *See Benefit*, 679 N.E.2d at 190 ("A listener's annoyance or offense at a

particular type of communicative activity does not provide a basis for a law burdening that activity."); *State v. Boehler*, 262 P.3d 637, 644 (Ariz. App. 2011) ("Our constitution does not permit government to restrict speech in a public forum merely because the speech may make listeners uncomfortable."). Moreover, it is clear from the legislative history of the Ordinance that the interest in promoting tourism is a mere pretext: it was suggested by the City Solicitor, never discussed by the City Council, and is completely unsupported by any evidence. The interest in promoting tourism is thus not only legally insufficient, it is factually baseless.

c.     The Ordinance Is Not Narrowly Tailored To Any Government Interest And Is Therefore Unconstitutionally Overbroad

Both content-based and content-neutral regulations of speech in public fora must be "narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." *Perry*, 460 U.S. at 45. The Ordinance is not narrowly tailored to any significant government interest and is therefore unconstitutionally overbroad.

To satisfy the narrow tailoring requirement, "the Government . . . bears the burden of showing that the remedy it has adopted does not 'burden substantially more speech than is necessary to further the government's legitimate interests.'" *Turner*, 512 U.S., at 665 (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 799 (1989)). Both the ban on all solicitation for immediate donations and the ban on "aggressive" solicitation for such donations restrict a substantial amount of peaceful speech that is neither threatening nor burdens tourism.

It is hard to fathom a more overbroad speech restriction than the Ordinance's ban on all solicitation for immediate donations in downtown Lowell. It bans everything from a homeless woman peacefully requesting food or money for her children, to a cigarette smoker asking a friend for a match, to a Salvation Army volunteer ringing a bell during the holidays, to a driver asking passersby for change to feed her meter, to a music student performing on the street with a

sign asking for money to help with tuition or to fund a local folk festival. It even bans solicitations on private property in downtown Lowell. Thus a Dunkin' Donuts employee could be arrested for putting a box next to the cash register asking customers to donate their change to a local charity, and a politician with an office downtown could be arrested for asking a supporter for a campaign contribution. Indeed, read to its logical conclusion the Ordinance precludes children in costumes from approaching downtown buildings to ask for candy or UNICEF donations each October 31. A rule of this breadth could not be justified by any government interest, and certainly not an interest in promoting tourism. No tourist has ever left town when they saw a Salvation Army volunteer.

Although the Ordinance only identifies an interest in promoting tourism as justifying the total ban, some City Councilors suggested in debate that the total ban was necessary to prevent panhandlers from harassing passers-by or from committing other crimes. But even as to this interest, entirely banning solicitation of immediate donations is drastically overbroad. Courts have systematically rejected claims that blanket bans on panhandling can be justified as increasing public safety. *See, e.g.*, *Benefit*, 679 N.E.2d, at 189 (describing the "presumption" that blanket bans on panhandling "nipped [crime] in the bud" as "too extravagant to deserve extended treatment"); *Speet*, 726 F.3d at 879-80; *Loper*, 999 F.2d at 701. After all, no one could possibly feel threatened by a street musician or a woman with her child asking for food.

The Ordinance's ban on "aggressive" solicitation of immediate donations of money is marginally more limited than its total ban, but still sweeps in substantially more peaceful and non-threatening speech than is necessary to fulfill the Council's interest in public safety. For example, the Ordinance bans as "aggressive" all solicitation, no matter how peaceful, from anyone waiting in line for anything. C.O. § 222.15(A)(3)(g). This prevents a homeless man

from sitting on a bench with a sign requesting money that is visible to people waiting in line to buy movie tickets, an activity that could not possibly be perceived as threatening. The Ordinance also creates countless no-solicitation buffer zones by banning as "aggressive" solicitation within 20 feet of the entrances or parking areas of theaters, public restrooms, bus stops, pay telephones, and seating areas of outdoor cafes or restaurants. *Id.* § 222.15(A)(3)(10). The Ordinance thus prohibits a homeless person from sitting quietly on a sidewalk, ten feet away from a bus stop, with a sign that says "Homeless – Please Help." The Ordinance also bans as "aggressive" any solicitation "after the person has given a negative response to such soliciting." *Id.* § 222.15(A)(3)(b). Prohibiting a solicitor from calmly requesting that a passerby reconsider his or her initial decision not to donate money bans a large range of peaceful conduct unrelated to safety threats. It could even prevent a homeless person from holding a sign asking for money that would be visible to someone who already refused to give.

To justify this rule, the Ordinance points to 237 police calls across all of Lowell related to panhandling in 2013, only "[s]ome" of which involved aggressive behavior, and without any description of what was "aggressive" about the panhandling in question or effort to explain how the specific provisions in the Ordinance track to those incidents. Moreover, any incident involving truly aggressive behavior was likely covered by existing laws banning such behavior. As the City Solicitor recognized, Lowell already has laws that prohibit unwanted touching and verbal harassment. Lawson Decl., Ex. 12; *see also Casey v. City of Newport, R.I.*, 308 F.3d 106, 115-16 (1st Cir. 2002) (ordinance overbroad if existing law bans targeted conduct). And Lowell is of course free to strengthen its laws that prohibit panhandlers (and others) from harassment, assault, fraud and other truly aggressive conduct. *See Benefit*, 679 N.E.2d at 109 n.7 ("There is ample authority available to the government to deal with beggars who transgress peaceful

limits."); *Loper*, 999 F.2d at 701 ("It is ludicrous . . . to say that a statute that prohibits only loitering for the purpose of begging provides the only authority that is available to prevent and punish all the socially undesirable conduct incident to begging described by the City Police.").

But that was not the Council's response to its purported interest in protecting the public. Instead it established hundreds of buffer zones in which no panhandling can occur by mislabeling as aggressive peaceful conduct. Thus in contrast to a handful of instances of aggressive conduct logged by police in a *year*, the Ordinance potentially precludes hundreds or thousands of protected solicitations every *day*. The unconstitutional applications of the Ordinance thus greatly outnumber the permissible applications of the Ordinance, and the Ordinance is overbroad under the First Amendment. *See Village of Schaumburg*, 444 U.S. at 637 (ordinance overbroad because "[t]he Village's legitimate interest in preventing fraud can be better served by measures less intrusive than a direct prohibition on solicitation"); *Speet*, 726 F.3d at 880 (statute overbroad because "Michigan's interest in preventing fraud can be better served by a statute that, instead of directly prohibiting begging, is more narrowly tailored to the specific conduct, such as fraud, that Michigan seeks to prohibit").

> d.    The Ordinance Does Not Leave Open Adequate Alternate
>        Channels Of Communication

Even if the Ordinance is somehow narrowly tailored, it still violates the First Amendment because it fails to "leave open ample alternative channels of communication." *Perry*, 460 U.S. at 45. Alternative channels that "involve more cost and less autonomy" to speakers, that "are less likely to reach persons not deliberately seeking" the protected speech, and that "may be less effective media for communicating the message" do not constitute ample alternative channels for protected speech. *Linmark Assocs., Inc. v. Twp. Of Willingboro*, 431 U.S. 85, 93 (1977). By depriving the homeless of the use of the sidewalks and streets of downtown Lowell to engage in

protected speech, the Ordinance forces individuals to take their speech to less busy and populous parts of the city, which are significantly less effective locations for soliciting donations. Quite simply, it does no good to solicit in areas in which there is no one on the street. Further, many of the organizations that support the homeless are located in the downtown area, so forcing the homeless to solicit in other parts of the City imposes significant burdens. *See* McLaughlin Decl. ¶¶ 6-7; Copley Decl. ¶¶ 6-7; Wood Decl. ¶ 4.

*      *      *

At bottom, the City Council passed this Ordinance to force the homeless into the shadows, away from places where their requests for charity might be seen or heard by those working or shopping in, or visiting Lowell, based on an assumption that the presence of panhandlers is an annoyance to others. But if the First Amendment means anything, it means that "[a] listener's annoyance or offense at a particular type of communicative activity does not provide a basis for a law burdening that activity." *Benefit*, 679 N.E.2d at 190. Plaintiffs are likely to succeed in demonstrating that the Ordinance on its face violates the First Amendment.

### 3.      The Ordinance is Unconstitutionally Vague

"[A] law fails to meet the requirements of the Due Process Clause if it is so vague and standardless that it leaves the public uncertain as to the conduct it prohibits." *City of Chicago v. Morales*, 527 U.S. 41, 56 (1999). Where a statute "is capable of reaching expression sheltered by the First Amendment, the [void for vagueness] doctrine demands a greater degree of specificity than in other contexts." *Smith v. Goguen*, 415 U.S. 566, 573 (1974).

In the First Amendment context, "[t]he prohibition against vague regulations of speech is based in part on the need to eliminate the impermissible risk of discriminatory enforcement . . . The question is . . . whether the Rule is so imprecise that discriminatory enforcement is a real possibility." *Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1051 (1991) (citing *Kolender v.*

*Lawson*, 461 U. S. 352, 357-58, 361 (1983)).  The prohibition against vague laws thus prevents the legislature from "set[ting] a net large enough to catch all possible offenders" to "increase the arsenal of the police."  *Papachristou v. City of Jacksonville*, 405 U.S. 156, 165 (1972).  A law "accords the police unconstitutional discretion in enforcement" when its "plain language is admittedly violated scores of times daily, yet only some individuals—those chosen by the police in their unguided discretion—are arrested."  *City of Houston v. Hill*, 482 U.S. 451, 466-67 (1987).  The power of lawmaking should not be left "to the moment-to-moment judgment of the policeman on his beat."  *Goguen*, 415 U.S. at 575.

By its plain terms, the Ordinance violates this basic principle.  The Ordinance sets a massive net, prohibiting all solicitation of immediate donations by anyone and for any purpose, and then explicitly gives the police discretion as to who should be reeled in.  This discretion is particularly problematic because the City Council already has made it perfectly clear who it wants subjected to the Ordinance—the homeless—and who it does not want to be subjected— everyone else.  Because the Ordinance places virtually unbridled enforcement discretion in the hands of the police the Ordinance is unconstitutionally vague under the Due Process Clause.[3]

4.    The Ordinance Impermissibly Discriminates Against the Homeless

The Ordinance also violates Plaintiffs' rights to equal protection by targeting the homeless.  Under the Equal Protection Clause, regulations must be "rationally related to a legitimate governmental purpose."  *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432,

---

[3] The Ordinance is also unconstitutionally vague because it does not make clear what conduct violates it.  For example, the Ordinance defines a solicitation to include the sale of an item "for an amount far exceeding its value . . . under circumstances a reasonable person would understand that the purchase is in substance a donation."  C.O. § 222.15(A)(2).  Would the sale of a street newspaper like "Spare Change" violate the Ordinance?  The newspaper sells for less than the price of most newspapers, but some (though not all) people who buy the paper have no intention to read it, attribute little to no value to it, and intend their purchase solely as a donation.  One could ask the same questions about the sale of Girl Scout cookies; most people view part of the purchase price of the cookies as a donation to the Scouts.  The Ordinance's definition of "aggressive manner" is rife with similar ambiguities.  To take but one example, the Ordinance makes it "aggressive" to "continu[e] to engage in panhandling toward a person after the person has given a negative response to such soliciting."  *Id.* § (A)(3)(b).  Is it a crime to ask a passerby to donate when that person declined a solicitation the previous day?  The previous week?

446 (1985). "[S]ome objectives—such as 'a bare . . . desire to harm a politically unpopular group'—are not legitimate state interests." *Id.* at 446-47 (internal citation omitted).

The Ordinance violates Equal Protection because its legislative history reveals beyond a doubt that the Council adopted it solely to disadvantage the homeless, who are unquestionably a politically unpopular group. The Councilors wanted to ban panhandling to remove the homeless from Lowell, while preserving the ability of fire fighters, non-profit organizations, and even street musicians—in other words, everyone other than the homeless—to solicit donations. The initial Ordinance accomplished this discrimination overtly. It was only when threatened with a constitutional challenge that the Council removed the explicit discrimination against the homeless, but replaced it with an even broader ban on protected speech coupled with unbridled police discretion in enforcement. The only basis for discriminating against solicitation by the homeless is irrational prejudice. As the Supreme Judicial Court noted in *Benefit*, it is "illogical to restrict the right of the individual beggar to seek assistance for himself while protecting the right of a charitable organization to solicit funds on his behalf." 679 N.E.2d at 188.

Dislike of the homeless is not a valid basis for state action. *See City of Cleburne*, 473 U.S. at 448. As the Supreme Court of California wrote in striking down an ordinance which was intended to eliminate the perceived "influx" of "hippies":

> [W]e cannot be oblivious to the transparent, indeed the avowed, purpose and the inevitable effect of the ordinance in question: to discriminate against an ill-defined social caste whose members are deemed pariahs by the city fathers. This court has been consistently vigilant to protect racial groups from the effects of official prejudice, and we can be no less concerned because the human beings currently in disfavor are identifiable by dress and attitudes rather than by color.

*Parr v. Mun. Court for Monterey-Carmel Judicial Dist*, 479 P.2d 353, 360 (Cal. 1971).

**B.**     <u>Plaintiffs Will Suffer Irreparable Harm Absent a Preliminary Injunction</u>

Absent an injunction, Plaintiffs will suffer irreparable harm from the City's infringement of their First Amendment rights. As the Supreme Court has held, "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod,* 427 U.S. at 373; *see also Wagner*, 100 F. Supp. 2d at 82. "[I]rreparable injury is presumed upon a determination that the movants are likely to prevail on their First Amendment claim." *Sindicato Puertorriqueno de Trabajadores v. Fortuno*, 699 F.3d 1, 11 (1st Cir. 2012).

**C.**     <u>In Light of Plaintiffs' Likelihood of Success and Showing of Irreparable Harm, the Balance of Harms Favors Plaintiffs</u>

The balance of harms also favors an injunction. Plaintiffs' interest in avoiding interference with their basic free speech rights easily outweighs the City's interest in enforcing an unconstitutional ordinance. *See ACLU v. Johnson*, 194 F.3d 1149, 1163 (10th Cir. 1999) ("[T]he threatened injury to Plaintiffs' constitutionally protected speech outweighs whatever damage the preliminary injunction may cause [to] Defendants' inability to enforce what appears to be an unconstitutional statute."); *Wagner*, 100 F. Supp. 2d at 87.

**D.**     <u>An Injunction Serves the Public Interest</u>

Issuing an injunction will serve the public interest because Plaintiffs have demonstrated that the challenged ordinance unconstitutionally restricts speech. As the court held in *Westfield High Sch. L.I.F.E. Club v. City of Westfield*, "[p]rotecting rights to free speech is *ipso facto* in the interest of the general public." 249 F. Supp. 2d 98, 128 (D. Mass. 2003). The issuance of an injunction here not only protects *Plaintiffs'* rights, but the rights of others whose speech may be chilled by the Ordinance. *See Johnson*, 194 F.3d at 1163.

**III.**     <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request this Court grant a preliminary injunction prohibiting the City from enforcing C.O. c. 222, § 222.15.

Respectfully submitted,

RANDY COPLEY, KENETH MCLAUGHLIN, and
JOSHUA WOOD,

By their attorneys,


/s/ Kevin P. Martin
Kevin P. Martin (BBO# 655222)
Damian W. Wilmot (BBO# 648693)
Robert D. Carroll (BBO# 662736)
GOODWIN PROCTER LLP
53 State Street
Boston, Massachusetts  02109
Tel.:  617.570.1000
Fax.:  617.523.1231
KMartin@goodwinprocter.com
DWilmot@goodwinprocter.com
RCarroll@goodwinprocter.com

Matthew R. Segal (BBO# 654489)
Sarah R. Wunsch (BBO# 548767)
American Civil Liberties Union
of Massachusetts
211 Congress Street
Boston, Massachusetts 02110
Tel.: 617.482.3170
Fax.: 617.451.0009
MSegal@aclum.org
SWunsch@aclum.org


Dated:   February 5, 2014