UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RANDY COPLEY, KENNETH MCLAUGHLIN, and JOSHUA WOOD,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>CITY OF LOWELL,<br><br>　　　　Defendant. | Civil Action No. 1:14-cv-10270-DPW<br><br>**Motion for Leave Granted on March 28, 2014** |

**REPLY IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

|      |                                                                                                                                                                  | Page |
|------|------------------------------------------------------------------------------------------------------------------------------------------------------------------|------|
| I.   | INTRODUCTION                                                                                                                                                     | 1    |
| II.  | ARGUMENT                                                                                                                                                         | 2    |
|      | A. No Case Has Upheld A Ban On All Solicitation In A Downtown Area                                                                                               | 2    |
|      | B. The Ban On All Solicitation Downtown Is Overbroad And Does Not Leave Open Adequate Channels Of Communication                                                  | 4    |
|      | C. Banning Or Restricting Only Immediate Donations Of Money Is Content-Based, And The City Does Not Argue the Ordinance Satisfies Strict Scrutiny                | 7    |
|      | D. The City's Ban On "Aggressive" Solicitation Is Not Narrowly Tailored To Any Government Interest                                                               | 9    |
| III. | CONCLUSION                                                                                                                                                       | 10   |

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*ACLU of Idaho, Inc. v. City of Boise*,
   No. 1:13-CV-00478-EJL, 2014 U.S. Dist. LEXIS 291 (D. Idaho Jan. 2, 2014) ................... 8, 9

*ACLU of Nevada v. City of Las Vegas*,
   466 F.3d 784 (9th Cir. 2006) ..................................................................................................8

*Benefit v. City of Cambridge*,
   679 N.E.2d 184 (Mass. 1997) ................................................................................................3

*Berger v. City of Seattle*,
   569 F.3d 1029 (9th Cir. 2009) ..........................................................................................8, 10

*Berkeley Cmty. Health Project v. City of Berkeley*,
   902 F. Supp. 1084 (N.D. Cal. 1995) ......................................................................................3

*Blair v. Shanahan*,
   775 F. Supp. 1315 (N.D. Cal. 1991) ......................................................................................3

*Boos v. Barry*,
   485 U.S. 312 (1988) .............................................................................................................10

*Browne v. City of Grand Junction*,
   No. 14-CV-00809-CMA, 2014 WL 1152020 (D. Colo. Mar. 21, 2014) ................................8

*C.C.B. v. State*,
   458 So. 2d 47 (Fla. Dist. Ct. App. 1984) ...............................................................................3

*Casey v. City of Newport, R.I.*,
   308 F.3d 106 (1st Cir. 2002) ................................................................................................10

*City of Houston v. Hill*,
   482 U.S. 451 (1987) ...............................................................................................................4

*Clatterbuck v. City of Charlottesville*,
   708 F.3d 549 (4th Cir. 2013) ........................................................................................3, 7, 8

*Doucette v. City of Santa Monica*,
   955 F. Supp. 1192 (C.D. Cal. 1997) ......................................................................................9

*Gresham v. Peterson*,
   225 F.3d 899 (7th Cir. 2000) ...........................................................................................8, 10

*ISKCON of Potomac, Inc. v. Kennedy*,
 61 F.3d 949 (D.C. Cir. 1995) ................................................................................................ 9

*Jones v. Wasileski*,
 No. 7:09CV00032, 2009 U.S. Dist. LEXIS 120156 (W.D. Va. Dec. 23, 2009) ...................... 9

*Kelly v. City of Parkersburg*,
 No. 6:13-cv-23260, 2013 WL 5716350 (S.D. W. Va. Oct. 16, 2013) ................................. 3, 8

*L.A. Alliance for Survival v. City of L.A.*,
 22 Cal. 4th 352 (Cal. 2000) ..................................................................................................... 9

*Ledford v. State*,
 652 So. 2d 1254 (Fla. Dist. Ct. App. 1995) ............................................................................ 3

*Loper v. New York City Police Dep't*,
 999 F.2d 699 (2d Cir. 1993) .................................................................................................... 3

*New Orleans v. Dukes*,
 427 U.S. 297 (1976) ................................................................................................................ 4

*People v. Griswold*,
 821 N.Y.S.2d 394 (Rochester City Ct. 2006) ......................................................................... 3

*Perry Educ. Ass'n v. Perry Local Educators' Ass'n*,
 460 U.S. 37 (1983) .................................................................................................................. 9

*Se. Promotions, Ltd. v. Conrad*,
 420 U.S. 546 (1975) ................................................................................................................ 7

*Smith v. City of Ft. Lauderdale*,
 177 F.3d 954 (11th Cir. 1999) ................................................................................................. 3

*Smith v. Goguen*,
 415 U.S. 556 (1974) ................................................................................................................ 4

*Speet v. Schuette*,
 726 F.3d 867 (6th Cir. 2013) ................................................................................................... 3

*State v. Boehler*,
 262 P.3d 637 (Ariz. Ct. App. 2011) ........................................................................................ 9

*Thayer v. City of Worcester*,
 No. 13-40057-TSH, 2013 U.S. Dist. LEXIS 152910 (D. Mass. Oct. 24, 2013) .............. passim

*Turner Broad. Sys., Inc. v. FCC*,
 512 U.S. 622 (1994) ................................................................................................................ 7

*United States v. Kokinda*,
    497 U.S. 720 (1990)..................................................................................................9

*United States v. Playboy Entm't Grp., Inc.*,
    529 U.S. 803 (2000)..................................................................................................7

*Wilkinson v. State*,
    860 F. Supp. 2d 1284 (D. Utah 2012)........................................................................3

**STATUTES**

950 Code Mass. Reg. 53.03 ...............................................................................................8

N.H. City Code § 13-94 .....................................................................................................6

**OTHER AUTHORITIES**

Black's Law Dictionary 1520 (9th ed. 2009)......................................................................5

Concise Oxford English Dictionary 1374 (12th ed. 2011) .................................................5

Tufts UNICEF Campus Initiative, Trick-or-Treat for UNICEF, available at
    http://uniceftufts.wordpress.com/category/unicef-trick-or-treat................................6

U.S. Const. amend. I ................................................................................................. passim

## I. INTRODUCTION

In its Opposition to Plaintiffs' Motion for Preliminary Injunction, Defendant City of Lowell (the "City") repeatedly obfuscates the Ordinance and ignores case law that undercuts its position.

The Lowell Ordinance Plaintiffs challenge does two things. First, it gives Lowell police complete discretion to order *all* those soliciting for charity in the Downtown Lowell Historic District (which encompasses most of downtown Lowell) to stop—or to order *none* to stop, or to order *only those singled out by police* to stop. The Ordinance gives police no guidelines in deciding how to exercise this discretion against charitable solicitors, and contains no requirement that solicitors be acting "aggressively" before they are required to stop at risk of arrest. The City has identified *no* case anywhere in the country upholding a law granting such blanket authority to police to prohibit peaceful solicitation in an entire downtown area, and Plaintiffs can identify none. On the other hand, the Ordinance's grant of this authority to prohibit peaceful solicitation is clearly inconsistent with numerous decisions (1) striking on First Amendment grounds laws that generally ban charitable solicitation and (2) striking on Due Process grounds laws that grant similar unfettered discretion to police. The City's argument that the promotion of tourism can justify the City's blanket ban has never been accepted by any court. That theory clearly proves too much; under it, charitable solicitors could be excluded from most of Boston or Manhattan. Importantly, this part of the Lowell Ordinance has nothing to do with *Thayer v. Worcester*, the case pending before the First Circuit on which the City places so much stock.

Second, Lowell's Ordinance imposes a ban on so-called "aggressive" panhandling, which is at issue in the *Thayer* case pending at the First Circuit. With respect to the "aggressive" panhandling ban, Plaintiffs respectfully submit that Judge Hillman erred in denying a preliminary injunction in *Thayer*. Regardless of the outcome of the *Thayer* appeal, the evidence

in this separate case involving the separate Lowell Ordinance demonstrates that a preliminary injunction is warranted. In response to this Motion, Lowell has pointed to "several dozen" incidents of purported misconduct by panhandlers over the course of nearly a year, Opp. at 11, yet the vast majority do not involve conduct criminalized by the new Ordinance. Instead, the incident log primarily reflects cases of (1) trespassing; (2) other conduct that is already the subject of existing criminal laws; or (3) generalized complaints about panhandling without any indication that the panhandler was engaged in conduct deemed "aggressive" by the Ordinance. Against the paucity of instances in which the Ordinance might arguably be applicable and might arguably be constitutional, the Ordinance clearly precludes a vast swathe of constitutionally-protected conduct: *e.g.*, all charitable solicitation, no matter how passive and non-threatening, near bus stops, or near people standing in a line, or near parking garages (among many other locations). Thus, even if the Ordinance has some constitutional applications, it is plainly unconstitutionally overbroad and is not narrowly tailored.

The Court should find that plaintiffs have a likelihood of success on the merits of their claim and have satisfied the other requirements for a preliminary injunction, and enjoin enforcement of Lowell's new Ordinance pending trial. Lowell endured without this new ban on peaceful solicitation for many years, and can surely forebear enforcement a few months more (and continue relying on existing laws) while the case proceeds to trial.

II. <u>**ARGUMENT**</u>

   A. <u>**No Case Has Upheld A Ban On All Solicitation In A Downtown Area**</u>

The City's principal theme in its Opposition is to express incredulity that Plaintiffs even filed this suit, in light of a supposed uniformity of opinion that ordinances similar to the Lowell Ordinance are constitutional and in light of the decision by Judge Hillman in the *Thayer* case not to enjoin an anti-panhandling law passed by Worcester. Opp. at 3-5, 9. The City's argument,

however, ignores the distinct provisions in the Lowell Ordinance. With respect to the City's ban on ignoring a police order to stop soliciting for charity anywhere in the Downtown Lowell Historic District—which encompasses most of downtown Lowell—the City can point to no supporting precedent and certainly cannot rely on *Thayer*, which involved no similar ban. The closest the city comes is the Eleventh Circuit's decision in *Smith v. City of Ft. Lauderdale*, 177 F.3d 954 (11th Cir. 1999), which upheld a ban on solicitation on a small stretch of beach. But the court only upheld that ban because the city allowed "begging in streets, on sidewalks, and in many other public fora throughout the City"—*i.e.* in the city's downtown. *Id.* at 957.

At the same time, the City entirely ignores the litany of cases striking down across-the-board bans on solicitation. *E.g.*, *Speet v. Schuette*, 726 F.3d 867 (6th Cir. 2013); *Clatterbuck v. City of Charlottesville*, 708 F.3d 549 (4th Cir. 2013); *Loper v. New York City Police Dep't*, 999 F.2d 699 (2d Cir. 1993); *Kelly v. City of Parkersburg*, No. 6:13-cv-23260, 2013 WL 5716350 (S.D. W. Va. Oct. 16, 2013); *Wilkinson v. State*, 860 F. Supp. 2d 1284 (D. Utah 2012); *Berkeley Cmty. Health Project v. City of Berkeley*, 902 F. Supp. 1084 (N.D. Cal. 1995), *vacated in part,* 966 F. Supp. 941 (N.D. Cal. 1997); *Blair v. Shanahan*, 775 F. Supp. 1315 (N.D. Cal. 1991), *vacated as moot*, 919 F. Supp. 1361 (N.D. Cal. 1996); *Benefit v. City of Cambridge*, 679 N.E.2d 184 (Mass. 1997); *Ledford v. State*, 652 So. 2d 1254 (Fla. Dist. Ct. App. 1995); *C.C.B. v. State*, 458 So. 2d 47 (Fla. Dist. Ct. App. 1984); *People v. Griswold*, 821 N.Y.S.2d 394 (Rochester City Ct. 2006). These cases compel the conclusion that the ban on all solicitation in downtown Lowell violates the First Amendment.

The ban on all solicitation in the Downtown Lowell Historic District also must fail because it is unconstitutionally vague. The Ordinance criminalizes a vast quantity of everyday conduct and then leaves "to the moment-to-moment judgment of the policeman on his beat"

whom to arrest. *Smith v. Goguen*, 415 U.S. 556, 575 (1974); *see also* Memo. at 17-18. The government cannot adopt a statute whose "plain language is admittedly violated scores of times daily, yet only some individuals—those chosen by the police in their unguided discretion—are arrested." *City of Houston v. Hill*, 482 U.S. 451, 466-67 (1987). That is exactly what Lowell's Ordinance does: It criminalizes every act of asking anyone for anything in downtown Lowell, and trusts Lowell's police to choose who to arrest. Notably, the City does not offer any response to Plaintiffs' argument that the total downtown ban is unconstitutionally vague. *See* Opp. at 17 (addressing vagueness only with respect to the ban on "aggressive" solicitation).

### B. The Ban On All Solicitation Downtown Is Overbroad And Does Not Leave Open Adequate Channels Of Communication

Undeterred by a dearth of legal support, the City justifies its total solicitation ban based on its interest in providing a "pleasant environment" for tourists and businesses in the Downtown Historic District. Opp. Ex. 5. The City cannot ban protected speech in public fora just because tourists and business owners would prefer not to hear it. The City cites no case allowing a government to ban protected speech in a downtown area for such reasons.[1] Nor could it. Under the City's expansive "tourism" rationale, it is difficult to see why, *e.g.*, Boston could not exclude charitable solicitation in the entire North End, Back Bay, Beacon Hill, near Faneuil Hall, along the waterfront, near interstate transportation hubs such as South Station, near any hotel, restaurant or bar catering to tourists, or by any other museum or sports venue not already picked up by the above geographic exclusions. A "tourism" theory would similarly exclude charitable solicitors from most of downtown Washington, D.C. and much of Manhattan. Simply to state the "tourism" theory for excluding charitable solicitation is to demonstrate its absurdity.

---

[1] Many of the cases the City cites do not involve the First Amendment at all. *E.g.*, *New Orleans v. Dukes*, 427 U.S. 297, 304 (1976) (preserving historical appearance is a valid government interest in Equal Protection rational basis scrutiny).

4

Even assuming the City's "tourism" justification is constitutionally relevant, the City has little response to Plaintiffs' argument that the ban is not narrowly tailored and is overbroad on its face. The Ordinance criminalizes activities as peaceful and non-threatening as women requesting money to feed their children, Salvation Army volunteers ringing bells during the holidays, and street musicians passing a hat after a performance. The City never explains how a ban on all solicitation activities supports tourism, business, or the City's chosen "aesthetics," other than to implicitly suggest that tourists do not like seeing the poor or being asked for spare change. But the City—which ultimately bears the burden of proof in defending its law—cites no evidence that this is so. Even if it were true, the City has cited no evidence that charitable solicitation in downtown Lowell has cost the City a single tourist dollar; and, even if had such evidence, the First Amendment protections of a city's residents cannot hinge on the biases of the city's visitors.

The City dismisses Plaintiffs' examples of the numerous everyday activities the Ordinance bans as "absurd," "esoteric," and "disingenuous." Opp. at 15. It claims that "the word 'solicitation' would not ordinary be used to encompass asking for a cigarette, putting out a tip jar at a café, or trick-or-treating." *Id.* But this statement—which the City never explains—is demonstrably wrong. Solicitation means the act of "ask[ing] for or try[ing] to obtain (something) from someone," Concise Oxford English Dictionary 1374 (12th ed. 2011), or "[t]he act or an instance of requesting or seeking to obtain something," Black's Law Dictionary 1520 (9th ed. 2009). All of these activities involve asking for or requesting something. Indeed, it is hard to see how these activities differ from the panhandling the City so dislikes other than the identity of the requester: If a child on the street asking for spare change is "soliciting" money, then a child ringing a doorbell asking for candy is "soliciting" candy. One New Hampshire town

regulates "the act of solicitation commonly known and referred to as 'trick or treating,'" and UNICEF's Campus Initiative says its Halloween fundraising "involves the distribution of small orange boxes by schools to trick-or-treaters, in which they can solicit small change donations from the houses they visit." [2] Even the City police department views asking for cigarettes as solicitation, as one of the calls the Lowell Police classified as "panhandling" involved a "LADY IN WHEELCHAIR ASKING PEOPLE FOR CIGARETTES AND CHANGE." Opp. Ex. 3 at 50. Although the City may wish it had passed an Ordinance that did not criminalize these everyday activities, it did not do so. And although the City may intend to *enforce* the Ordinance only against people whose solicitation it deems unpleasant, that selective enforcement would only amplify the reasons to grant a preliminary injunction.

The City further ignores the evidence that the true purpose for the Ordinance was to remove the homeless from the streets of downtown Lowell, not to promote tourism, urging the Court to simply disregard the City Councilors' "inartfully or indelicately articulated" statements made during debate. Opp. at 4. But the issue is not a few misplaced words: The Lowell City Council has actively sought to drive the homeless from the City's streets since at least 2008, trying to remove homeless shelters and groups supporting the homeless, clear homeless encampments, and now, silence its homeless population in the downtown. Memo. at 5-8. When Councilor Lorrey said he wanted to "send out a message" to panhandlers: "not in Lowell," he was not being inartful. He was honestly stating the purpose of the Ordinance he had introduced.

Finally, the City argues that the ban on all solicitation downtown leaves open adequate alternate channels of communication because downtown is only five percent of the "geographic expanse" of the City. This requires little response. "One is not to have the exercise of his liberty

---

[2] Berlin, N.H. City Code § 13-94; Tufts UNICEF Campus Initiative, Trick-or-Treat for UNICEF, available at http://uniceftufts.wordpress.com/category/unicef-trick-or-treat.

6

of expression in appropriate places abridged on the plea that it may be exercised in some other place." *Se. Promotions, Ltd. v. Conrad*, 420 U.S. 546, 556 (1975). Furthermore, by banning solicitation downtown, the Ordinance forces individuals to take their speech to parts of the city which are significantly less effective locations for soliciting donations. Memo at 16-17.

      **C.**      <u>**Banning Or Restricting Only Immediate Donations Of Money Is Content-Based, And The City Does Not Argue the Ordinance Satisfies Strict Scrutiny**</u>

While the ban on downtown solicitation would fail even under intermediate scrutiny, the downtown solicitation ban—and the aggressive solicitation ban—are both content-based and therefore would have to survive strict scrutiny, which requires that a law be the "least restrictive" means possible of addressing a "compelling" government interest. *United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 813 (2000). Neither can meet that exacting standard.

As Plaintiffs explained in their opening Memorandum, and the Fourth Circuit articulated in *Clatterbuck*, 708 F.3d at 556, regulating solicitation for immediate donations of money while not regulating solicitation for future donations or anything else plainly "impose[s] differential burdens upon speech because of its content." *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 641-42 (1994). A homeless person who requests an immediate donation of money fifteen feet from a public toilet violates the Ordinance, while an Amnesty International volunteer who solicits commitments for future donations in the same location does not. The only difference between these two people is the content of their speech: one requests money now, the other requests money later. And as Plaintiffs already explained, that distinction is not accidental; it targets those with immediate needs while exempting those who have the luxury to solicit future donations. Memo. at 11.

The City never explains how a distinction between soliciting immediate donations and soliciting future donations or signatures is not based on content. Instead, the City: (1) argues that

7

people do not "solicit" signatures; (2) inaccurately claims that *Clatterbuck* is alone in finding regulation of only immediate donations of money content-based; and (3) lists inapposite cases. These arguments are unavailing.

The City's argument that requesting a signature is not "solicitation" is incorrect. Solicitation means to ask for or request something from someone, *supra* at 5, which clearly encompasses requests for signatures.[3] Further, other courts agree with *Clatterbuck* that regulations targeting only immediate donations of money are content-based. The Ninth Circuit held in *Berger v. City of Seattle*, that a regulation was content-based where it "specifically restricts street performers from communicating a particular set of messages—requests for donations." 569 F.3d 1029, 1051 (9th Cir. 2009); *see also ACLU of Nevada v. City of Las Vegas*, 466 F.3d 784, 794 (9th Cir. 2006). Although the Seventh Circuit in *Gresham v. Peterson* did not decide the question, it wrote that a restriction on immediate donation of money would "seem to be content-based" because it "does not prohibit all solicitation on city streets, only solicitations for immediate cash donations" and "[o]ne could . . . ask passers-by for their signatures, time, labor or anything else, other than money." 225 F.3d 899, 905 (7th Cir. 2000). The District of Idaho held that regulating only solicitations of immediate donations of money is content-based because "[t]he ordinance does not restrict solicitation of signatures for petition on a matter of public concern, political support solicitation, religious solicitation." *ACLU of Idaho, Inc. v. City of Boise*, No. 1:13-CV-00478-EJL, 2014 U.S. Dist. LEXIS 291 at *13 (D. Idaho Jan. 2, 2014); *see also Kelly*, 2013 WL 5716350 at *4; *Browne v. City of Grand Junction*, No. 14-CV-00809-CMA, 2014 WL 1152020 (D. Colo. Mar. 21, 2014). Far from resting on a "slender reed," Opp. at 11, the Fourth Circuit's decision in *Clatterbuck* is in line with the majority approach. The City

---

[3] *See, e.g.*, 950 Code Mass. Reg. 53.03(18)(c) ("No person shall collect or solicit signatures on nomination papers or petitions of any kind within 150 feet of" a voting building.).

8

cites no case that rejects *Clatterbuck*'s careful analysis. The regulation at issue in *United States v. Kokinda*, 497 U.S. 720 (1990), did not target specific solicitation: It banned all immediate and future donations of money, as well as collecting signatures in an election campaign and commercial soliciting. *Id.* at 724. *L.A. Alliance for Survival v. City of L.A.*, 22 Cal. 4th 352 (Cal. 2000), interpreted the California, not the U.S. Constitution. And the other cases the City cites did not address Plaintiffs' specific content-based argument.[4]

Content-based regulations only survive if "necessary to serve a compelling state interest." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983). Because the City identified no compelling interest, both the total and "aggressive" bans fail.

### D. The City's Ban On "Aggressive" Solicitation Is Not Narrowly Tailored To Any Government Interest

The City's purported lack of "aware[ness] of any instance anywhere where a ban on aggressive panhandling has been invalidated," Opp. at 9, is perplexing, because Plaintiffs cited such cases in their opening brief, and others exist. In *State v. Boehler*, 262 P.3d 637 (Ariz. Ct. App. 2011), for example, the court struck down part of Phoenix's "aggressive panhandling" ordinance, and earlier this year the District of Idaho preliminarily enjoined Boise's "aggressive" panhandling ordinance, *ACLU of Idaho*, 2014 U.S. Dist. LEXIS 291. And many cases the City cites involve less burdensome restrictions on solicitation. For example, the City relies heavily on the Seventh Circuit's decision in *Gresham*, but the Indianapolis ordinance at issue in that case allowed panhandlers to solicit using signs anywhere, at any time, which was a key basis for the

---

[4] *See ISKCON of Potomac, Inc. v. Kennedy*, 61 F.3d 949, 954-55 (D.C. Cir. 1995) (rejecting argument that banning all solicitation of money was content-based by finding that regulation allowed solicitation of future donations; did not address whether regulating solicitation for present but not future donations is content-based); *Doucette v. City of Santa Monica*, 955 F. Supp. 1192, 1204-05 (C.D. Cal. 1997) (regulating solicitation of donations but not sales is content-neutral); *Thayer v. City of Worcester*, No. 13-40057-TSH, 2013 U.S. Dist. LEXIS 152910 at *21-22 (D. Mass. Oct. 24, 2013) (holding that aggressive solicitation ban is content-neutral without addressing differential treatment of immediate and future donations); *Jones v. Wasileski*, No. 7:09CV00032, 2009 U.S. Dist. LEXIS 120156 at *22 (W.D. Va. Dec. 23, 2009) (same).

9

court's decision to uphold the ordinance. 225 F.3d at 901. The Lowell ordinance bans even passive solicitation using signs. The City cannot prohibit peaceful conduct simply by labeling it aggressive.

The City also relies heavily on Judge Hillman's decision in *Thayer* concerning the Worcester "aggressive" panhandling ordinance, but that reliance must fail for two reasons. First, as plaintiffs in that case are presently arguing to the First Circuit, Judge Hillman committed legal error by reasoning that Worcester could prohibit speech that residents find "annoying." The Supreme Court could not have been clearer that "citizens must tolerate insulting, and even outrageous, speech in order to provide adequate breathing space to the freedoms protected by the First Amendment." *Boos v. Barry*, 485 U.S. 312, 322 (1988) (internal quotation marks omitted); *see also Berger*, 569 F.3d at 1054 ("[W]e cannot countenance the view that individuals who choose to enter [public parks], for whatever reason, are to be protected from speech and ideas those individuals find disagreeable, uncomfortable, or annoying."). Second, in this case, Lowell has submitted an incident log confirming that complaints about panhandlers principally concern trespassing and conduct that is already prohibited by existing criminal statutes. The City has provided no explanation of how any remaining incidents map on to the specific prohibitions of Lowell's "aggressive" panhandling ordinance. The City cannot justify banning a large amount of peaceful conduct based on its desire to ban a narrower range of aggressive conduct that can be more narrowly targeted. *Casey v. City of Newport, R.I.*, 308 F.3d 106, 115-16 (1st Cir. 2002); Memo. at 15-16. Thus, whatever happens in Worcester, Lowell has not shown a compelling or substantial need in Lowell for the particular "aggressive" panhandling ordinance that it passed.

## III. <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request this Court grant a preliminary injunction prohibiting the City from enforcing C.O. c. 222, § 222.15.

Respectfully submitted,

RANDY COPLEY, KENETH MCLAUGHLIN, and JOSHUA WOOD,

By their attorneys,

/s/ Kevin P. Martin
Kevin P. Martin (BBO# 655222)
Damian W. Wilmot (BBO# 648693)
Robert D. Carroll (BBO# 662736)
GOODWIN PROCTER LLP
53 State Street
Boston, Massachusetts 02109
Tel.: 617.570.1000
Fax.: 617.523.1231
KMartin@goodwinprocter.com
DWilmot@goodwinprocter.com
RCarroll@goodwinprocter.com

Matthew R. Segal (BBO# 654489)
Sarah R. Wunsch (BBO# 548767)
American Civil Liberties Union
of Massachusetts
211 Congress Street
Boston, Massachusetts 02110
Tel.: 617.482.3170
Fax.: 617.451.0009
MSegal@aclum.org
SWunsch@aclum.org

Dated: March 28, 2014

**CERTIFICATE OF SERVICE**

      I, Kevin P. Martin, hereby certify that as a result of filing the foregoing document through the court's CM/ECF system, a copy will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on March 28, 2014.

                                                    /s/ Kevin P. Martin