UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| KENNETH MCLAUGHLIN and<br>JOSHUA WOOD,<br><br>      Plaintiffs,<br><br>v.<br><br>CITY OF LOWELL,<br><br>      Defendant. | C.A. 14-10270-DPW |

## CITY'S MEMORANDUM IN PARTIAL OPPOSITION TO
## PLAINTIFFS' MOTION FOR FEES AND COSTS

Defendant City of Lowell opposes the magnitude of attorney's fees sought by Plaintiffs. Plaintiffs seek nearly three-quarters of a million dollars in fees for a matter that never went to trial and concerning an ordinance that was never enforced. The purported amount of Plaintiffs' claimed fees is not "reasonable" under 42 U.S.C. 1988, as the underlying staffing levels, hours expended, and purported hourly rates are not themselves reasonable. Additional discounts should also be applied, as elucidated below. In the absence of a dramatic reduction in the claimed fees, the fee award would represent an unconscionable windfall to Plaintiffs' attorneys.

The City does not oppose Plaintiffs' request for expenses.

### POINTS OF COMPARISON

| | |
|---|---|
| Amount of fees claimed (ECF No. 150) for preparing<br>    fee petition (ECF No. 142 et seq.), after<br>        discount | $22,857.20 |
| 2014 per capita income within the City of Lowell[1] | $23,046 [2] |

---

[1] *See generally Perdue v. Kenny A.*, 559 U.S. 542, 559 (2010) (rejecting fee enhancement; "[t]hese fees would be paid by the taxpayers of Georgia, where the annual per capita income is less than $34,000…")

| | |
|---|---|
| Plaintiffs' claimed fees and costs in this litigation | $736,466.05 |

amount of fee settlements in other solicitation cases:

| | |
|---|---|
| *Cutting v. Portland* (solicitation on medians), District of Maine, after appeal to the First Circuit, 2015 | $175,000[3] |
| *Clatterbuck v Charlottesville* (solicitation on downtown mall), Virginia, after appeal to the Fourth Circuit, 2015 | $125,975.70 (attorney's fees = $123,000)[4] |
| *Guy v. Hawaii* (roadway and "aggressive solicitation" ordinance), District of Hawaii, 2015 | $80,000 inclusive of damages[5] |
| *Speet v. Schuette* (state-wide ban on begging), after appeal to the Sixth Circuit, 2013 | $48,000 (attorney's fees = $35,000)[6] |
| *Waechter v. Saugatuck* (licensing of street performers), Western District of Michigan, 2015 | $30,000 in attorney's fees[7] |
| *Pendleton v. Town of Hudson* (generic solicitation ordinance), District of New Hampshire, 2015 | $29,860 in attorney's fees[8] |
| *Reynolds v. Henrico County* (roadway solicitation ordinance), Eastern District of Virginia, after successful appeal to the Fourth Circuit, 2015 | $0 [9] |
| Hypothetical annualized compensation at rates ($375-$850/hour) billed by Plaintiffs, assuming 2000 hours/year and no deductions for overhead | $750,000-$1,700,000 |
| FY2016 compensation range for City of Lowell attorneys | $50,589-$121,485 [10] |

---

[2] http://factfinder2.census.gov/bkmk/table/1.0/en/ACS/10_5YR/DP03/1600000US2537000
[3] http://bangordailynews.com/2015/11/04/news/portland/portland-to-pay-175000-in-legal-fees-for-panhandling-case/
[4] http://www.c-ville.com/panhandling-payout-city-settle-suit-anti-begging-ordinance/
[5] http://acluhi.org/2015/09/14/settlement-in-hawaii-county-free-speech-case/
[6] http://www.mlive.com/news/grand-rapids/index.ssf/2013/10/post_443.html
[7] Case no. 1:14-cv-01291-RJJ, ECF No. 16.
[8] http://aclu-nh.org/wp-content/uploads/2015/03/Final-Hudson-Settlement-Agreement.pdf
[9] Case 3:12-cv-00779-JAG, Document 64: "…based on a change in Plaintiffs circumstances, the Parties agree that the claims asserted in Plaintiffs Complaint are now moot…"

| | |
|---|---:|
| Plaintiffs' claimed fees and costs | $736,466.05 |
| FY16 budget for legal claims against the City of Lowell, including all federal and state civil rights claims, vehicular accidents and other tort claims, and public ways claims | $775,000[11] |

## ARGUMENT

### I. Plaintiffs Seek a Windfall.

The fee-shifting provisions under federal civil rights law were designed to compensate, and even perhaps incentivize, litigation vindicating constitutional rights.  *See Perdue v. Kenny A.*, 559 U.S. 542, 559 (2010); *Pa. v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986); *Blum v. Stenson*, 465 U.S. 886, 897 (1984).  Fee-shifting was not meant to provide dramatic windfalls.  *See generally id.*  There is no evidence that Congress intended to create the equivalent of punitive damages awards under another name, or to create a massive deterrent to a government entity in enacting legislation, howsoever modeled on legal precedent existing at the time of enactment.

The Supreme Court has taken note of the fact that attorney's fees awards assessed against government entities are paid out of the pockets of taxpayers, perhaps (as here) from a economically disadvantaged locality:

> [at footnote 8] These fees would be paid by the taxpayers of Georgia, where the annual per capita income is less than $34,000…and the annual salaries of attorneys employed by the State range from $48,000 for entry-level lawyers to $118,000 for the highest paid division chief…
>
> [main text:] ….the fees are paid in effect by state and local taxpayers, and because state and local governments have limited budgets, money that is used to pay attorney's fees is money that cannot be used for programs that provide vital public services. *Cf. Horne v. Flores*, 557 U.S. 433, 448, 129 S. Ct. 2579, 2594, 174 L.

---

[10] Proposed budget, http://www.lowellma.gov/citymanager/Documents/FY2016%20Proposed%20Budget.pdf, page VII-58.
[11] Id. at II-76.

Ed. 2d 406 (2009) (payment of money pursuant to a federal-court order diverts funds from other state or local programs).

*Perdue v. Kenny A.*, 559 U.S. at 559; *see also Comas v. Schaefer*, 2012 U.S. Dist. LEXIS 154835, *16-17 (W.D. Mo. 2012) (noting "the strained economic condition of the State of Missouri's budget").

This case is the inverse of *Perdue*. In *Perdue*, the Supreme Court rejected a fee enhancement that would have enabled the prevailing plaintiffs' counsel to receive compensation equivalent to that of the "richest law firms in the country." Here, Plaintiffs actually were represented, on an outside-counsel basis, by one of the richest law firms in the country.[12] The City submits that the rationale of *Perdue* should still apply. The wealth of Plaintiffs' outside counsel's firm, and its customary billing rates, were not necessary to obtain competent counsel in this matter. *See generally Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 190 (2d Cir. 2007) (noting that fee calculation could be affected by attorneys' "desire to obtain the reputational benefits that might accrue from being associated with the case"). While plaintiffs were undoubtedly excellently represented, the City submits that the results obtained in this litigation were largely a product of factors other than Plaintiffs' counsel's superlative (and occasionally voluminous) submissions.

While the definition of a windfall is not precise, it is clear that the criteria for a windfall are met here. The claim here of $736,466.05 in costs and fees is an order of magnitude greater than would have been necessary to attract competent counsel. (*See supra* and *infra* regarding the amount of fees in comparable cases involving solicitation.) The City respectfully requests that the Court keep the avoidance of a windfall in mind as it considers Plaintiffs' "lodestar" and the other factors discussed below.

---

[12] *See* https://en.wikipedia.org/wiki/List_of_law_firms_by_profits_per_partner (accessed on December 15, 2015), citing American Lawyer Magazine, listing Goodwin Procter ($1,515,000 in profits per partner) as 38th, for 2012.

## II. The Multiplicands of Plaintiffs' "Lodestar" Should Both be Dramatically Reduced.

### A. **Plaintiffs Manifestly Overstaffed This Case**.

Plaintiffs staffed nine attorneys on this case. To the City's knowledge, nine attorneys is simply unheard of, for a case of these dimensions. *See e.g. Cocroft v. Smith,* 2015 U.S. Dist. LEXIS 160310, *6-8 (D. Mass 2015) (expressing incredulity at the ACLU's staffing of five, let alone seven, attorneys on civil rights case). "[A] court should not hesitate to discount hours if it sees signs that a prevailing party has overstaffed a case." *Gay Officers Action League v. Puerto Rico*, 247 F.3d 288, 297 (1st Cir. 2001). In *Cocroft*, the Court discounted the prevailing Plaintiffs claimed fees by 40% where the plaintiffs staffed five attorneys on a case that went to trial. See 2015 U.S. Dist. LEXIS 160310 at *7. *A fortiori*, a similar or greater reduction should apply here.

Plaintiffs staffed three senior attorneys (Carroll, Martin, Wunsch), three mid-level attorneys (Lusic, Segal,[13] Zimmer) and three junior associates (Kirsch, Lawson, Zhang). As indicated in the attached declaration of C. Michael Carlson, the City staffed this case with one primary mid-level attorney and (eventually) one additional junior attorney. The City respectfully suggests that the *maximum* appropriate staffing on plaintiff sign would have been one partner, one senior associate and up to two junior associates.

Exhibit 1 tabulates the literally hundreds of time entries for "conferring" with other lawyers on this case. Excessive conferencing is only one of the inefficiencies inherent in overstaffing. The City can only speculate that the motive for distributing work so widely is a concern that as many attorneys as possible accumulate a modicum of pro bono hours – but *not too many* pro bono hours. Such incentives cannot have been contemplated by Congress in

---

[13] As the legal director of the ACLU of Massachusetts, Mr. Segal is clearly senior within his organization, but he is included within in the mid-level tier because his claimed billing rate is comparable to the senior associates within Goodwin Procter.

enacting 42 U.S.C. 1988, and the City cannot be responsible for the concomitant inefficiencies.

For several other reasons too, Plaintiffs' billed time should be substantially discounted:

### Block-Billing

Several of Plaintiffs' attorneys always or occasionally engage in the practice of "block-billing." *See* Plaintiffs' timesheets, ECF No. 144.4. "'Block billing' can be defined as the time-keeping method by which an attorney lumps together the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." *Conservation Law Found., Inc. v. Patrick*, 767 F. Supp. 2d 244, 253 (D. Mass. 2011) (citations omitted). Block-billing is disfavored in the context of fee petitions and courts have typically applied to a 20% reduction in total fees as a consequence. *See id.*

### Unbillable time

Plaintiffs effectively concede that billing for representation of former plaintiff Randy Copley is also precluded. *See* Affidavit of Kevin Martin, ECF No. 144, p. 2; *see also Maldonado v. Municipio De Barceloneta*, 2012 U.S. Dist. LEXIS 107366, at 30 (D.P.R. 2012). Exhibit 2 tabulates these entries. Where unbillable time is "mixed in" with billable time, the City has discounted the time entries by half.

### Practice, Practice, Practice

Fee-shifting statutes should not "serve as full employment or continuing education programs for lawyers…." *Lipsett v. Blanco*, 975 F.2d 934, 938 (1st Cir. 1992); *Ferraro v. Kelley*, 2011 U.S. Dist. LEXIS 81443, *11 (D. Mass. 2011). Yet Plaintiffs bill for multiple hours of "deposition practice" for various junior associates. The City submits that such billings would hardly be tolerated by any paying client. At the other end of the spectrum of legal experience, Plaintiffs bill for "moot courts" for the benefit of Plaintiffs' lead counsel – apparently, three

separate moot court dates relative to the summary judgment hearing alone, each moot court also attended by ranks upon ranks of junior counsel. The City further submits that the foregoing amounts to litigation "overkill," that is, work performed "without regard to productivity." *See Hart v. Bourque*, 798 F.2d 519, 523 (1st Cir. 1986); *see also Hensley v. Eckerhart*. 461 U.S. 424, 434 (1983) (mandating exclusion of hours that were not "reasonably expended"). Exhibit 3 tabulates these "practice" hours.

### Excessive Hours Generally

In other respects too, Plaintiff's counsel seems to have expended hours applying a "spare no expense" approach that at times seems almost inexplicable with regard to the resulting work product. Exhibit 4 tabulates the hours expended "drafting" each of Plaintiffs' major motion papers. 68.5 hours are spent on Plaintiffs' reply in support of their motion for preliminary injunction – a 10-page document. The equivalent of an entire month's time (154.9 hours) is spent on Plaintiffs' opposition to the City's motion for summary judgment. Such time is not "reasonably expended." *See id*.

In light of all these factors, the City respectfully suggests that the Court discount Plaintiffs' lodestar by 60% – over and above the claimed 20% reduction Plaintiffs say they have already taken.

### B. Plaintiffs' Claimed Hourly Rates are Fantastical.

Plaintiffs assert fee rates of up to $850/hour. Such Brobdingnagian rates exceed the fee rates awarded in any published cases in the First Circuit (or anywhere else to the City's knowledge). *See e.g. Hutchinson v. Patrick*, 636 F.3d 1, 16 (1st Cir. 2011) (awarding rates, including to a major law firm, ranging from $250/hour to $425/hour); *Conservation Law Found., Inc. v. Patrick*, 767 F. Supp. 2d 244, 257 (D. Mass. 2011) (awarding rates, including two major

law firm, ranging from $175/hour to $310/hour for specialized litigation). Attorney Segal was recently awarded $350/hour in a civil rights case, not the $600/hour he claims here. *See Cocroft*, 2015 U.S. Dist. LEXIS 160310 at 11. In light of the foregoing precedents, the *Tuli* case, cited by Plaintiffs, would appear to be an outlier. *See Tuli v. Brigham & Women's Hospital, Inc.*, 2009 U.S. Dist. LEXIS 129768 (D. Mass. 2009) (Gertner, J.)

Core vs. Non-Core Work

In their fee submission, Plaintiffs do not distinguish between "core and "non-core" legal work. *See Brewster v. Dukakis*, 3 F.3d 488, 492 n.4 (1st Cir. 1993). Non-core work encompasses "less demanding tasks, including letter writing and telephone conversations." *See id.*; *Parker v. Town of Swansea*, 310 F. Supp. 2d 376, 383 (D. Mass. 2004) (according a rate of $120/hour for non-core work); *Chestnut v. Coyle*, 2004 U.S. Dist. LEXIS 3713, 9-10 (D. Mass. 2004). Writing e-mail has also been found to be non-core work. *See generally Pagan-Melendez v. Puerto Rico*, 2015 U.S. Dist. LEXIS 57764, *4-5 (1st Cir. 2015); *Rogers v. Cofield*, 935 F. Supp. 2d 351 (1st Cir. 2013); *Mills v. Cabral*, 2010 U.S. Dist. LEXIS 61385 (1st Cir. 2010).

Exhibit 4 reflects a tabulation of entries partially or entirely reflecting non-core work resulting in a total of 137.1 non-core hours.[14] Non-core work is typically discounted by at least a third. *See Brewster*, 3 F.3d at 492 n.4; *Chestnut*, 2004 U.S. Dist. LEXIS 3713 at 9-10.

The City notes that the preparation of a fee petition by the ACLU was recently accorded a reduced rate of $100/hour, "given the ministerial nature of such a motion." *Cocroft*, 2015 U.S. Dist. LEXIS 160310 at 11. The City respectfully suggests that a similar result should obtain with regard to Plaintiffs' fee petition herein.

---

[14] The City includes within the category of non-core work is the essentially repetitive and mechanical work that went into the analysis of the City's "CAD calls" (computer entries of calls to the Lowell Police Department). Where non-core work is block-billed with core work, the City has estimated the amount of non-core work as being half the total time entry.

In view of the rate structures approved in the cited cases, and of the incidence of non-core work (including the preparation of the fee petition), the City respectfully suggests that the Court reduce Plaintiffs' counsel's claimed fee rates by at least at least 40%.

### III. Plaintiffs' Lodestar Should be Adjusted Downward for Additional Reasons.

Other similar lawsuits provide useful guidance as to an appropriate level of fees.

#### A. Plaintiffs' Claimed Fees are Exponentially Greater Than Fee Payments in Most Other Comparable Cases.

As indicated *supra* (p. 2), Plaintiffs' fee claim is approximately 10 to 20 times greater than fee payments in other comparable solicitation cases. Clearly, the success for the plaintiffs in those other litigations would indicate that the fee payments therein were "adequate to attract competent counsel." *See Blum v. Stenson*, 465 U.S. 886, 897 (1984); *see also Perdue v. Kenny A.*, 559 U.S. 542, 559 (2010) (purpose of Section 1988 is "to ensure that civil rights plaintiffs are adequately represented"*).*

With regard to the more substantial fee settlements cited above, namely those in the *Clatterbuck* and *Cutting* litigations, those lawsuits involved appeals to the federal circuit court and, in the case of *Cutting*, a trial.[15] The *Clatterbuck* and *Cutting* settlements nonetheless represent a fifth to a quarter of the amounts sought by Plaintiffs herein.

The size of "awards in similar cases" is a black-letter reason for adjusting a claimed fee amount. *Blanchard v. Bergeron*, 489 U.S. 87, 91 (1989); *Coutin v. Young & Rubicam Puerto Rico, Inc.*, 124 F.3d 331, 337 (1st Cir. 1997); *Porter v. Cabral,* 2007 U.S. Dist. LEXIS 12306, 35-36 (D. Mass. 2007). The City respectfully requests that the Court align any fee award with comparable cases, namely cases that settled in the five figures or at most, the low six figures.

---

[15] *See* ECF docket, *Thayer v. Worcester*, Case No. 13-40057-TSH; ECF docket, *Cutting v. Portland*, Case No. 13-cv-359-GZS.

### A. The Issues, and the Actual Briefing by Plaintiffs, Are Highly Duplicative of a Parallel Litigation.

Not only do other lawsuits involving solicitation provide useful guidance as to reasonable levels of fees, but: half of the ordinance at issue in this suit was derived nearly *in toto* from half of an ordinance at issue in a contemporaneous lawsuit litigated by the same law firm that represented Plaintiffs herein. *See Thayer v. City of Worcester* 2015 U.S. Dist. LEXIS 151699, *23-28 (D. Mass. 2015) (Worcester ordinance); ECF No. 115.4 within the instant case (Lowell ordinance). The legal analysis of these nearly identical provisions (the "aggressive panhandling" provisions) is effectively identical. Plaintiffs should have been able to achieve significant efficiencies in conducting both litigations. *Sportsfragrance, Inc. v. Perfumer's Workshop Int'l, Ltd.*, 2009 U.S. Dist. LEXIS 60597, *7 (W. D. Wash. 2009) ("[I]t is…appropriate for the court to discount any work which could be used in ancillary or parallel litigation" (citing *Scott Fetzer Co. v. Weeks,* 122 Wn.2d 141, 151 n.6 (1993))).

As indicated in the attached Exhibit 5, significant overlap exists in the briefing in the two lawsuits, both of which involved motions for preliminary injunction and summary judgment. The briefing in *Thayer* largely preceded those in the instant case – which theoretically should have resulted in a "savings" of up to 50%. None of this actual and potential efficiency is reflected in the magnitude of Plaintiffs' fee claim.[16]

### IV. Some of Plaintiffs' Costs are Excessive.

While the City does not object to Plaintiffs' seeking to recover costs for e.g. deposition transcripts, other items appear excessive:

    Transcript of 04/14/14 [preliminary injunction] hearing            $219
    DHR & Associates Service of Two Subpoenas for production in Lowell, MA    $378

---

[16] Again for reasons of its own, Plaintiffs' outside counsel apparently staffed the Worcester case with an almost entirely different contingent of attorneys from those in this case. *See* ECF docket, *Thayer v. Worcester*, Case No. 13-40057-TSH.

In the absence of an appeal (for instance), obtaining a hearing transcript is a "luxury" in which the City, at least, can rarely indulge. The document production subpoenas were for witnesses already subpoenaed for deposition appearances, i.e., the requests for documents could have been incorporated into the deposition subpoenas.

## CONCLUSION

To summarize and tabulate the reductions suggested by the City:

$728,917.50 attorney's fees x 40% (overstaffing, block-billing, unbillable, excessive hours) equals = $291,567

x 60% (reduction in fee rate) = $174,940.20

This takes the fees to the approximate range of the settlement in *Cutting v. Portland*. Given that *Cutting* featured a trial and appeal to the First Circuit:

x 66% = $115,460.53

Adding a discount for expected efficiencies fees vis-à-vis the *Thayer* case:

x 75% = $86,595.40

plus costs (less requested deductions)

+ $7547.75 minus $219 minus $378 = **$93,546.15**

For all of the reasons stated herein, the City of Lowell requests that the court award fees and costs in the above amount, or a lesser amount.

December 16, 2015								Respectfully submitted,
									CITY OF LOWELL, DEFENDANT
									By its Attorneys,


									/s/ C. Michael Carlson
									Christine P. O'Connor, City Solicitor
									BBO #567645
									C. Michael Carlson, Assistant City Solicitor
									BBO #681286
									Hannah Pappenheim, Assistant City Solicitor
									BBO #691721
									City of Lowell Law Department
									375 Merrimack Street, 3rd Floor
									Lowell, MA   01852-5909
									Tel: 978-674-4050
									Fax: 978-453-1510
									co'connor@lowellma.gov
									mcarlson@lowellma.gov
									hpappenheim@lowellma.gov


**CERTIFICATE OF SERVICE**

     I hereby certify that a true copy of the foregoing document was filed on December 16, 2015 through the Electronic Case Filing System for filing and electronic service to the registered participants as identified on the Notice of Electronic Filing.

									/s/ C. Michael Carlson
									C. Michael Carlson